1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   MARCELINA CUBILO,              )        NO. CV 10-9709 AGR
                                    )
12          Plaintiff,              )
                                    )
13             v.                   )
                                    )
14   MICHAEL J. ASTRUE,             )        **MEMORANDUM OPINION AND**
     Commissioner of Social Security,)       **ORDER**
15                                  )
            Defendant.              )
16                                  )
                                    )
17   _____)

18          Plaintiff ("Cubilo") filed this action on December 22, 2010.  Pursuant to 28

19   U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on

20   January 19 and 28, 2011.  (Dkt. Nos. 8, 9.)  On October 20, 2011, the parties filed

21   a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has

22   taken the matter under submission without oral argument.

23          Having reviewed the entire file, the Court affirms the decision of the

24   Commissioner.

25
26
27
28

**I.**

**PROCEDURAL BACKGROUND**

On November 1, 2007, Cubilo filed an application for disability insurance benefits and supplemental security income benefits alleging an onset date of May 1, 2003.[1]  AR 10, 189-94.  The applications were denied initially and upon reconsideration.  AR 10, 127-31, 135-39.  Cubilo requested a hearing before an Administrative Law Judge ("ALJ").  AR 141.  On June 9, 2009, the ALJ conducted a hearing at which Cubilo and a vocational expert ("VE") testified.  AR 69-109.  On January 29, 2010, the ALJ issued a decision denying benefits.  AR 7-41.  On October 29, 2010, the Appeals Council denied the request for review.  AR 1-4.  This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

---

[1]  Cubilo filed a prior application for disability insurance benefits on May 24, 2005 alleging an onset date of September 5, 2003.  AR 112.  An Administrative Law Judge ("ALJ") conducted a hearing and issued a decision denying benefits in November 2006.  AR 112-18.  The Appeals Council denied Cubilo's request for review.  AR 10.  No further appeal was filed.  *Id.*

1   evidence is susceptible to more than one rational interpretation, the Court must

2   defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### III.

### DISCUSSION

**A.   Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only
if his physical or mental impairment or impairments are of such severity that he is
not only unable to do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful
work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20,
21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.   The ALJ's Findings**

The ALJ found Cubilo has the severe impairments of "poorly controlled
diabetes with peripheral neuropathy and retinopathy, status post arthroscopic
debridement and manipulation of the right shoulder for adhesive capsulitis and
tendonitis in January 2005, adhesive capsulitis and tendonitis of the left shoulder
with impingement and obesity."  AR 37.  Cubilo has the residual functional
capacity ("RFC") to perform light work, "that is, lift and carry up to 10 pounds
frequently and 20 pounds occasionally, stand and/or walk 6/8 hours, sit 6/8 hours,
frequently climb, balance, stoop, kneel, crouch and crawl, do overhead shoulder
activities 4/8 hours, limited depth perception, accommodation and field of vision in
right eye and with no limitations on the left eye, so that the individual is essentially
monocular."  *Id.*  She is capable of performing past relevant work as a bindery
operator.  AR 39.  In addition, there are other jobs that exist in significant
numbers in the national economy that Cubilo can also perform, such as cashier II
and storage facility clerk.  AR 39-40.

**C.    Presumption of Continuing Nondisability and Changed Circumstances**

Cubilo contends the ALJ erred by not giving *res judicata* effect to the prior ALJ's RFC determination.

The principle of *res judicata* applies to administrative decisions, albeit less rigidly than in judicial proceedings.  *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  To overcome a presumption of continuing nondisability, a claimant "must prove 'changed circumstances' indicating a greater disability."  *Id.* at 693.  Attainment of "advanced age" (55 years old for purposes of benefits), for example, constitutes a changed circumstance precluding application of res judicata.  *Id.*; *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (change in age category, increase in severity of an impairment, or existence of new impairment would constitute changed circumstances).  Cubilo changed age category on her 50th birthday on May 20, 2007.

The prior ALJ's "findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some *res judicata* consideration in subsequent proceedings."  *Chavez*, 844 F.2d at 694.  "[S]uch findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).  Medical evaluations conducted after the first disability determination "necessarily present[] new and material information not presented to the first ALJ."  *Id.*

In a decision dated November 17, 2006, the prior ALJ found that Cubilo was not disabled.  AR 118.  Cubilo had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for six hours in an eight-hour work day; occasionally climb, bend, kneel, crouch and crawl; and occasionally reach overhead  with the bilateral upper extremities.  She had a sit/stand option, with standing and walking up to 10 minutes at a time.  AR

4

1    115.  The prior ALJ determined that although Cubilo could not return to her past
2    relevant work, there were a significant number of light exertion jobs existing in the
3    national economy that Cubilo could do in spite of her limitations, such as call-out
4    operator; counter clerk, photo; and usher.  AR 116.

5        Here, the ALJ found no basis to reopen the previous determination.  AR 12.
6    Based on medical evidence after the prior November 17, 2006 decision, the ALJ
7    did not adopt the previous residual functional capacity determination.  AR 28.
8    "[T]he current medical record and residual functional capacity assessments do
9    not require a limitation to occasional postural activities and occasional overhead
10   reaching with the bilateral upper extremities or a sit/stand option, as previously
11   found by [the prior ALJ]."  *Id.*  The ALJ also added a limitation for Cubilo's
12   monocular vision. *Id.*

13       To support her RFC assessment, the ALJ expressly relied on medical
14   evaluations conducted after the first disability determination.  Cubilo argues that
15   "[t]he ALJ does not cite even one shred of evidence indicating improvement in
16   Ms. Cubilo's medical condition since ALJ Benham's decision."  (JS at 13.)  The
17   record does not support Cubilo's argument.

18       The ALJ carefully reviewed the medical records for the years 2007-2009
19   and discussed RFC assessments after the prior ALJ's decision.  AR 16-28.

20       Dr. Enriquez, an examining physician, reported on February 22, 2008 that
21   Cubilo's right shoulder pain is relieved with pain medication, she had normal
22   cervical spine and lumbar ranges of motion, and she had mildly decreased range
23   of motion of both shoulders  AR 16, 17, 323, 325-26.  Dr. Enriquez found Cubilo
24   was able to lift and carry 50 pounds occasionally and 25 pounds frequently;
25   stand, sit or walk 6 hours out of 8; perform above-the-shoulder lifting, pushing
26   and pulling frequently; and bend, stoop and twist frequently.  AR 17, 326.

27       Dr. Masserman, Agreed Medical Examiner for Cubilo's workers'
28   compensation claim, found on February 7, 2008 that Cubilo had slight tenderness

1    to palpation about the left shoulder and no significant tenderness about the right

2    shoulder, decreased range of motion of the shoulders, full range of motion of all

3    upper and lower extremity joints, and intact and normal neurologic examination.

4    AR 17-18, 479-82.  Dr. Masserman noted that Cubilo declined to have the

5    recommended left shoulder surgery and that she started on the vocational

6    rehabilitation process, which was "a satisfactory decision" on Cubilo's part.  AR

7    18, 482.  Dr. Masserman opined that Cubilo be restricted to "no rapid or vigorous

8    or repetitive shoulder movements, no heavy lifting, repeated heavy pushing or

9    pulling, and no repeated or prolonged overhead activities with 1 or both hands."

10   AR 18, 483.  Cubilo could "pursue her vocational rehabilitation program for the

11   position of sales/receptionist."  AR 18, 483.

12        The ALJ noted that a November 26, 2008 progress note reflects that Cubilo

13   reported she was not having any pain.  AR 19, 435.

14        Dr. Hunt, Cubilo's treating physician, examined Cubilo in November 2008

15   with mostly normal results.  He found she had some difficulties with her left

16   shoulder for which she refused surgery and obtained good relief from pain

17   medication.  AR 19, 380-92.  In December 2008, Cubilo reported that the home

18   exercise program reduced her shoulder pain and increased her range of motion.

19   AR 19, 375.  In January 2009, Dr. Hunt reported Cubilo had good shoulder

20   strength.  AR 20, 373.  In June 2009, Dr. Hunt found Cubilo extremely limited, but

21   pointed to no supporting medical evidence.  AR 23-24, 472-78.

22        The State Agency physicians, Dr. Schwartz and Dr. Danufsky, found in

23   2008 that Cubilo had the residual functional capacity to lift and carry up to 10

24   pounds frequently and 20 pounds occasionally; stand, walk, and sit for 6 out of 8

25   hours; frequently climb, balance, stoop, kneel, crouch and crawl; do overhead

26

27

28

1    shoulder activities 4 out of 8 hours;[2] and frequently do postural activities.  AR 18,

2    328-33, 370-71; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

3    (a non-examining physician's opinion may serve as substantial evidence when it

4    is supported by other evidence in the record and is consistent with it).

5         The medical evidence dated after the prior ALJ's decision constitutes new

6    and material evidence that permitted the ALJ to reassess Cubilo's residual

7    functional capacity.  *Stubbs*, 539 F.3d at 1173.

8         **D.    Treating Physicians**

9          Cubilo contends the ALJ improperly rejected the opinions of her treating

10   orthopedist, Dr. Hunt, and her treating psychiatrist, Dr. Curtis.

11        An opinion of a treating physician is given more weight than the opinion of

12   a non-treating physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When,

13   as here, a treating physician's opinion is contradicted by another doctor, "the ALJ

14   may not reject this opinion without providing specific and legitimate reasons

15   supported by substantial evidence in the record. This can be done by setting out

16   a detailed and thorough summary of the facts and conflicting clinical evidence,

17   stating his interpretation thereof, and making findings." *Id.* at 632 (citations

18   omitted and internal quotations omitted).  When the ALJ declines to give a

19   treating physician's opinion controlling weight, the ALJ considers several factors,

20   including the following:  (1) the length of the treatment relationship and frequency

21

22

23

24

25

26

27         [2]  The two State Agency physicians found that Cubilo could frequently do
overhead shoulder activities.  "Frequently means occurring one-third to two-thirds
28   of an 8-hour workday."  AR 328.

7

of examination;[3] (2) the nature and extent of the treatment relationship;[4] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) the consistency with the record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

In a Physical Residual Functional Capacity Questionnaire dated June 15, 2009,[5] Dr. Hunt diagnosed status post right shoulder surgery and left shoulder impingement syndrome.  AR 472.  His clinical findings were "palpable tenderness" in both shoulders.  AR 23, 472.  Later in the form, Dr. Hunt indicated Cubilo has muscle weakness, tenderness and decreased range of motion in flexion and abduction.  AR 24, 473.

Dr. Hunt indicated Cubilo's prognosis was good with physical therapy, possible injection and possible surgery.  AR 23, 472.  Her symptoms interfered frequently with her attention and concentration, and she was severely limited in her ability to deal with work stress.  AR 24, 474.  Cubilo had no limitation on the number of city blocks she could walk without rest, and she could sit and stand/walk at least 6 hours in an 8 hour working day.  She could sit continuously for 45 minutes and stand continuously 45 minutes.  She would need breaks to

---

[3]  "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."  20 C.F.R. § 404.1527(d)(2)(i).

[4]  "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."  20 C.F.R. § 404.1527(d)(2)(ii).

[5]  The ALJ agreed to leave the record open for Dr. Hunt to submit his opinion after the hearing.  AR 108.

1    walk every 10 minutes and would need to take unscheduled breaks 3-4 times per

2    shift.  AR 24, 475-76.  However, Cubilo was not limited to a job which would allow

3    her to shift position at will from sitting, standing or walking.  AR 476.  She did not

4    need an assistive device.  *Id.*  Cubilo could use her arms for repetitive reaching

5    (including overhead) 10% of the day.  AR 24, 477.  She must avoid even

6    moderate exposure to extreme cold, extreme heat, and high humidity.  AR 24,

7    477.  She must avoid concentrated exposure to chemicals, cigarette smoke,

8    fumes, odors, dusts, and gases.  AR 24, 477.  Cubilo likely would be absent from

9    work more than three times a month as a result of her impairments.  AR 24, 478.

10        The ALJ provided specific and legitimate reasons for rejecting Dr. Hunt's

11   June 2009 opinion:  (1) he did not explain the basis for his conclusions in the

12   "check off disability form;" (2) his opinion was not supported by the medical

13   records, including his treatment records; and (3) his opinion was not supported by

14   the minimal and conservative treatment he provided.  AR 27-28, 31.

15        An ALJ "need not accept the opinion of any physician, including a treating

16   physician, if that opinion is brief, conclusory, and inadequately supported by

17   clinical findings."  *Thomas*, 278 F.3d at 957.  An ALJ may discount a

18   check-the-box report that does not explain the basis of its conclusions.  *See*

19   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

20   properly rejected treating physician's conclusory check-list report).

21        The ALJ found that Dr. Hunt's June 2009 opinion was "a check off disability

22   form" lacking "medical facts or explanation."  AR 23-24.  The ALJ rejected Dr.

23   Hunt's opinion because it was not supported by his treatment records.  AR 27-28;

24   *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ may reject opinion of

25   treating physician if it is unsupported by treatment notes).  The ALJ noted that Dr.

26   Hunt's opinion submitted in June 2009 for Cubilo's Social Security claim was

27   inconsistent with his January 22, 2009 Primary Treating Physician's Initial Report

28   submitted for her workers' compensation claim.  AR 27-28.  In Dr. Hunt's January

9

2009 report, he stated that Cubilo remains permanent and stationary as noted in the February 7, 2008 report of Dr. Masserman, the Agreed Medical Examiner.[6] AR 27, 389-90, 483.  Upon examination, Dr. Hunt found the following:  right shoulder status post manipulation under anesthesia with arthroscopic and subacromial debridement; adhesive capsulitis left shoulder with possible rotator cuff tear; and psychiatric complaints.  AR 389.

The ALJ noted that Dr. Hunt did not provide "any proof of a change" in Cubilo's condition to warrant the extreme limitations listed in the June 2009 disability form.  AR 27.  In November 2008, Dr. Hunt found no atrophy of the bilateral shoulders, intact sensation and reflexes of the bilateral upper extremities, no shoulder acromionale, no significant glenohumeral joint arthrosis, slightly hooked acromion, and mild degenerative changes at the acromioclavicular joint.  AR 19, 385-89.  She had tenderness to palpation in the cervical and thoracic spine, reduced range of motion in the shoulders, and strength of 4/5 on external rotation with pain.  AR 386.  Dr. Hunt diagnosed Cubilo with right shoulder status post manipulation under anesthesia with arthroscopic and subacromial debridement; adhesive capsulitis left shoulder with possible rotator cuff tear; and psychiatric complaints.  AR 389.  Cubilo gets "good relief" from cream medication and did not want oral antiinflammatory medicine or left shoulder surgery.  AR 19, 390.  Cubilo could continue doing her home exercise program (AR 390), which "reduce[d] her shoulder pain and increase[d] her [range of motion]."  AR 19, 375.

The ALJ further noted that Dr. Hunt's opinion was not supported by the medical record as a whole.  AR 27.  Dr. Enriquez found that Cubilo could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; could stand, walk or sit with normal breaks for 6 hours in an 8 hour day; could do

---

[6] Cubilo argues that Dr. Hunt did not necessarily concur with Dr. Masserman that she was permanent and stationary.  Dr. Hunt unequivocally stated in his January 2009 report that Cubilo "remains permanent and stationary." AR 390.

1   frequent above-the-shoulder lifting, pushing, pulling; and could do frequent

2   bending, stooping, and twisting.  AR 326.  An examining physician's opinion

3   constitutes substantial evidence when it is based on independent clinical findings.

4   *Orn*, 495 F.3d at 632.  Dr. Enriquez' opinions were based on independent clinical

5   findings made during examination in February 2008.  AR 322-26, 479-86.

6       Dr. Schwartz and Dr. Danufsky, State Agency non-examining physicians,

7   found that Cubilo could occasionally lift and/or carry 20 pounds and frequently lift

8   and/or carry 10 pounds; could stand, walk or sit with normal breaks for 6 hours in

9   an 8 hour day; was unlimited in pushing and/or pulling; could do above-the-

10  shoulder lifting for 4 hours in an 8 hour day; had some visual limitations; and had

11  no established environmental limitations.  AR 328-33, 370-71.  "'The opinion of a

12  nonexamining physician cannot by itself constitute substantial evidence that

13  justifies the rejection of the opinion of either an examining physician *or* a treating

14  physician.'"  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir.

15  2008) (citation omitted) (emphasis in original).  However, a non-examining

16  physician's opinion may serve as substantial evidence when it is supported by

17  other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041;

18  *see also Thomas*, 278 F.3d at 957.  The State Agency physicians' opinions were

19  consistent with Dr. Masserman and Dr. Enriquez, and the record as a whole.

20      The ALJ discounted Dr. Hunt's opinion based on the conservative

21  treatment he prescribed.  AR 28.  At her November 2008 examination, Dr. Hunt

22  refilled her prescription for Gabaketo-L transdermal compound, a cream that

23  provided her with good relief.  AR 390.  At her December 2008 examination,

24  Cubilo reported the home exercise program reduced her shoulder pain and

25  increased her range of motion.  AR 375.  At her January 2009 examination, she

26  was given Anaprox (an anti-inflammatory), Gabaketo-L transdermal compound,

27  and Prilosec (for stomach acid).  AR 374.  Cubilo was treated conservatively.

28  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (physical therapy

and anti-inflammatory medication considered conservative treatment).

The ALJ provided specific and legitimate reasons for rejecting Dr. Curtis' opinion.  In a May 11, 2009 Mental Impairment Questionnaire, Dr. Curtis diagnosed Depressive Disorder (NOS) and anxiety with psychotic factors.  AR 418.  He opined that Cubilo had poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbance; emotional ability; social withdrawal or isolation; decreased energy; recurrent panic attacks; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; generalized persistent anxiety; and hostility and irritability.  AR 418-19.  She was "oriented to time, place and person;" her judgment was "adequate;" her impulse control was "intact;" and she suffered from "depression, anxiety, concentration and memory impairment."  AR 419.  He treated her with outpatient psychotherapy on a weekly basis, biofeedback, and medication (Celexa for depression and Prosom for sleep).  AR 406, 420.  Her prognosis was that she was "unable to work at any job for the foreseeable future."  *Id.*  Dr. Curtis anticipated Cubilo would be absent from work more than three times a month.  AR 421.  He found no useful ability to function in most areas of mental abilities and aptitudes needed to work.  AR 421-22.  Cubilo was "unable to tolerate the stresses of work environment," "unable to interact effectively with co-workers," "beset by depression and anxiety," "unable to concentrate[,] focus on tasks and remember things," "unable to get along with [the] general public," and "overwhelmed."  AR 422.  Dr. Curtis found that Cubilo had extreme limitations in activities of daily living and maintaining social functioning, frequent limitations in concentration, persistence or pace, and repeated episodes (three or more) of deterioration or decompensation lasting at least 2 weeks, requiring increased treatment, significant alteration in medication, or increased need for a more structured psychological support system (*e.g.,* hospitalization, or halfway house).  AR 423.  Cubilo's limitations had existed since March 2004.  *Id.*

1     The ALJ rejected Dr. Curtis' opinion because he provided a "check off

2  disability form" without medical findings to support his "extreme limitations" and

3  opinion that she had been mentally non-functional since March 2004.  AR 23, 31.

4  An ALJ "need not accept the opinion of any physician, including a treating

5  physician, if that opinion is brief, conclusory, and inadequately supported by

6  clinical findings."  *Thomas*, 278 F.3d at 957.  An ALJ may discount a

7  check-the-box report that does not explain the basis of its conclusions.  *See*

8  *Batson*, 359 F.3d at 1195.

9     The ALJ correctly noted that the record does not support Dr. Curtis' opinion

10  that Cubilo suffered from such extreme mental limitations since March 2004.  AR

11  31.  Dr. Curtis first saw Cubilo in February 2009.  She had not been treated by a

12  psychotherapist before seeing Dr. Curtis.  AR 29, 31, 294-327, 343-64, 394, 400,

13  479-84, 496.  Dr. Hunt referred Cubilo to Dr. Curtis in December 2008 or January

14  2009 when she began complaining of psychiatric problems.  AR 377, 395.  At Dr.

15  Curtis' February 2009 examination, she reported no previous episodes of

16  emotional upset or confusion, no prior psychiatric hospitalization, no prior suicide

17  attempts, and no prior prescription for any psychotropic medication.  AR 31, 399.

18  Dr. Curtis noted that in 2004, Cubilo was diagnosed with high blood pressure and

19  seizure disorder, but that the conditions "have been controlled with medication

20  and without emotional complications."  AR 404.  He did not mention in his

21  February 20, 2009 Initial Evaluation and Report with Psychological Test Results

22  ("Initial Evaluation"),  submitted in support of Cubilo's workers' compensation

23  claim, that Cubilo's psychological problems started in March 2004.  In the Initial

24  Evaluation, Dr. Curtis found Cubilo to be temporarily totally disabled on a

25  combined physical and psychological basis and in need of emotional treatment in

26  the form of once weekly cognitive behavioral psychotherapy in an individual or

27  group setting for four months, weekly stress-reduction biofeedback, Celexa for

28  depression and ProSom for sleep, and future supportive group psychotherapy.

1   AR 404-06.  The ALJ noted that the conservative treatment contradicted Dr.

2   Curtis' opinion that Cubilo was mentally non-functional.  AR 31; *see Johnson*, 60

3   F.3d at 1433.

4          The ALJ further noted that Dr. Curtis' opinion conflicted with the mental

5   status examination and evaluation by Dr. Warick, a Qualified Medical Evaluator

6   for Cubilo's workers' compensation claim, rendered seven days earlier.  AR 31.

7   On May 6, 2009, Dr. Warick diagnosed Cubilo with subclinical depression,

8   nonindustrial causes, and passive-aggressive/passive-dependent personality

9   disorder.  AR 501, 503.  Cubilo had a GAF of 70, which indicated mild

10  symptoms.[7]  AR 501.  Dr. Warick's opinion constituted substantial evidence

11  because it was based on independent clinical findings he made during an

12  examination in May 2009.  *See Orn*, 495 F.3d at 632.

13         The ALJ provided specific and legitimate reasons for rejecting the opinions

14  of Dr. Hunt and Dr. Curtis.  The ALJ did not err.

15         **E.    Dr. Masserman's Opinion**

16         Cubilo contends the ALJ did not provide specific and legitimate reasons for

17  rejecting the portion of Dr. Masserman's opinion that she is precluded from

18  "prolonged overhead activities" with one or both hands.

19         Dr. Masserman performed a comprehensive physical examination of Cubilo

20  on February 7, 2008 for her Agreed Medical Re-examination for her workers'

21  compensation claim.  AR 479.  Cubilo complained of intermittent minimal to slight

22  right shoulder pain, becoming occasional slight to moderate.  She complained of

23  intermittent slight to moderate left shoulder pain becoming occasionally moderate

24  to severe with repeated or vigorous use of the upper extremities.  AR 483.  Dr.

25  _____

26        [7]  A GAF score of 61 to 70 indicates "some mild symptoms, such as
      depressed mood and mild insomnia, or some difficulty in social occupational, or
      school function, such as occasional truancy or theft within the household, but
27    generally functioning pretty well, and has some meaningful interpersonal
      relationships."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.
28    2000).

1   Masserman opined that Cubilo be restricted to no rapid or vigorous or repetitive

2   shoulder movements, no heavy lifting, repeated heavy pushing or pulling, and no

3   repeated or prolonged overhead activities with one or both hands.  AR 18, 483.

4   Dr. Masserman found that Cubilo could not do her past work, but could pursue

5   her vocational rehabilitation program for the position of sales/reception.  AR 18,

6   483, 486.

7          The ALJ discussed Dr. Masserman's February 2008 report in considering

8   the residual functional capacity assessments since the prior ALJ's decision.  AR

9   17-18, 26-27.  The ALJ twice noted that Dr. Masserman had found Cubilo could

10  not do prolonged overhead activities with one or both hands. AR 18, 26-27.  The

11  ALJ's RFC determination limited overhead activities to 4/8 hours.  AR 37.

12         Cubilo acknowledges that Dr. Masserman did not define what he meant by

13  "prolonged."  (JS at 35.)  Cubilo argues the ALJ erred by not translating workers'

14  compensation terminology to correspond to Social Security terminology.  As

15  Cubilo admits, however, an ALJ's decision need not contain an explicit

16  "translation."  *Id.*; *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002)

17  ("[w]hile the ALJ's decision need not contain an explicit 'translation,' it should at

18  least indicate that the ALJ recognized the differences between the relevant state

19  workers' compensation terminology, on the one hand, and the relevant Social

20  Security disability terminology, on the other hand, and took those differences into

21  account in evaluating the medical evidence")   The ALJ expressly acknowledged

22  that the workers' compensation and Social Security programs were two distinct

23  programs.  AR 17, 27; *see Desrosiers*, 846 F.2d at 576.[8]

24

25         [8] Terms of art used in workers' compensation proceedings are not
26  equivalent to Social Security disability terminology.  *Macri v. Chater*, 93 F.3d 540,
    544 (9th Cir. 1996); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573,
27  576 (9th Cir. 1988).  Under California's workers' compensation guidelines, work
    capacity is not based on strength but on whether a claimant sits, stands or walks
28  most of the day.  *Desrosiers*, 846 F.2d at 576.  The categories of work under the
    Social Security Act "are measured quite differently.  They are differentiated

15

1    Cubilo has not shown that the ALJ's finding that Cubilo can do overhead

2  activities 4/8 hours is inconsistent with Dr. Masserman's opinion.  AR 17-18.

3  Cubilo argues the term "prolonged" means "at least half of the work day" based

4  on the district court opinion in *Booth*.  In *Booth*, the district court made an

5  assumption regarding the meaning of "prolonged" sitting based on the way a

6  particular doctor used the term in his opinion.  *Booth*, 181 F. Supp. 2d at 1107-08

7  (assuming that "prolonged sitting means sitting at least half of the work day;

8  otherwise, the sitting restriction would not add measurably to the disability rating,"

9  which required sitting approximately half the time) (internal quotation marks

10  omitted).  The ALJ's determination that Cubilo was restricted to overhead

11  shoulder activities 4/8 hours is arguably consistent with the definition of

12  "prolonged" in the Schedule for Rating Permanent Disabilities.  State of California

13  Department of Industrial Relations, Division of Workers' Compensation,

14  www.dir.ca.gov/DWC/PDR1997.pdf at 2-19 (disability precluding prolonged

15  weight-bearing "contemplates ability to do work approximately 75% of the time in

16  standing and walking position, and requires sitting approximately 25% of the

17  time").  The ALJ's residual functional capacity determination included a rational

18  interpretation of Dr. Masserman's opinion regarding Cubilo's overhead reaching

19  capabilities.  *See Andrews*, 53 F.3d at 1039-40 ("We must uphold the ALJ's

20  decision where the evidence is susceptible to more than one rational

21  interpretation."); *see also Macri*, 93 F.3d at 544 (In analyzing medical reports

22  using workers' compensation standards, the ALJ "is entitled to draw inferences

23  'logically flowing from the evidence.'") (citation omitted).  This court cannot say

24  that the ALJ erred.

25    **F.  Credibility**

26    Cubilo contends the ALJ erred in finding her symptom testimony not

27    _____

28  primarily in step increases in lifting capacities."  *Id.*

16

1  credible.

2     "To determine whether a claimant's testimony regarding subjective pain or

3  symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

4  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine

5  whether the claimant has presented objective medical evidence of an underlying

6  impairment 'which could reasonably be expected to produce the pain or other

7  symptoms alleged.'" *Id.*  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

8  1991) (en banc)).

9     "Second, if the claimant meets this first test, and there is no evidence of

10  malingering, 'the ALJ can reject the claimant's testimony about the severity of her

11  symptoms only by offering specific, clear and convincing reasons for doing so.' "

12  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility

13  determination, the ALJ 'must specifically identify what testimony is credible and

14  what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464

15  F.3d 968, 972 (9th Cir. 2006) (citation omitted).  "[T]o discredit a claimant's

16  testimony when a medical impairment has been established, the ALJ must

17  provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d at 635

18  (citations and quotation marks omitted).  "The ALJ must cite the reasons why the

19  claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted).

20     In weighing credibility, the ALJ may consider factors including:  the nature,

21  location, onset, duration, frequency, radiation, and intensity of any pain;

22  precipitating and aggravating factors (*e.g.*, movement, activity, environmental

23  conditions); type, dosage, effectiveness, and adverse side effects of any pain

24  medication; treatment, other than medication, for relief of pain; functional

25  restrictions; the claimant's daily activities; and "ordinary techniques of credibility

26

27

28

17

1 | evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[9]
2 | (quotation marks omitted).  The ALJ may consider (a) inconsistencies or
3 | discrepancies in a claimant's statements; (b) inconsistencies between a
4 | claimant's statements and activities; (c) exaggerated complaints; and (d) an
5 | unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

6 |      The ALJ found that Cubilo's statements concerning the intensity,
7 | persistence, and limiting effects of her symptoms were not credible to the extent
8 | they were inconsistent with the RFC assessment.  AR 38.  The ALJ relied on five
9 | reasons:  (1) lack of objective medical evidence supporting Cubilo's claims; (2)
10 | conservative treatment; (3) non-compliance with diabetes mellitus treatment; (4)
11 | daily activities; and (5) inconsistent statements.  AR 32-33, 38-39.

12 | **1. Objective Medical Evidence**

13 |      Although lack of objective medical evidence supporting the degree of
14 | limitation "cannot form the sole basis for discounting pain testimony," it is a factor
15 | that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d
16 | 676, 681 (9th Cir. 2005).

17 |      With respect to Cubilo's physical health, Cubilo has diabetes mellitus that is
18 | not always well controlled.  The ALJ found that the objective examinations do not
19 | show she has problems with gait, ambulation or balance that prevent standing or
20 | walking.  AR 24, 16, 323-25, 481.  The medical records do not support Cubilo's
21 | claim of extreme hand limitations.  AR 25, 323, 388.  Objective tests do not show
22 | a severe spinal impairment or severe joint abnormalities.  AR 25-26, 324, 385,
23 | 481.  Cubilo had arthroscopic surgery on her right shoulder, with good results in
24 | terms of restoring her functioning and relieving her pain.  AR 26, 373.  Cubilo

25 | 

26 |    [9] "Social Security Rulings do not have the force of law.  Nevertheless, they
27 | constitute Social Security Administration interpretations of the statute it
administers and of its own regulations," and are given deference "unless they are
28 | plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
F.2d 1453, 1457 (9th Cir. 1989).

1  suffers from some degenerative disease at the A/C joint in her left shoulder with

2  localized tenderness, but she obtains relief with cream medication and decided

3  against surgery. AR 17, 26, 375, 390, 482.

4       With respect to mental condition, the ALJ found no evidence in the record

5  to support Dr. Curtis' opinion that Cubilo had been mentally non-functional since

6  March 2004. AR 31, 423. Cubilo was not evaluated or treated for mental health

7  problems until she saw Dr. Curtis in February 2009. AR 31-32, 394-95. In May

8  2009, her mental status examination by Dr. Warick showed no evidence of

9  clinical depression or anxiety, and she was assessed a GAF score of 70. AR 29,

10  501, 503. The record lacks treatment records to show a material change in

11  Cubilo's mental condition after Dr. Warick's assessment. AR 31-32. Further,

12  Cubilo did not allege a medically determinable mental impairment in her prior or

13  current applications for Social Security benefits. AR 29, 61-62, 220.

14       **2. Conservative Treatment**

15       "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

16  testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted

17  Cubilo was prescribed non-narcotic pain medication and got good relief from

18  cream medication. AR 19, 21, 390, 491. She used a home exercise program.

19  AR 19, 390. She did not require strong pain medications, participation in a pain

20  treatment program, aggressive exercises or physical therapy, or immobilization of

21  her left upper extremity.[10] AR 32. Cubilo responded to a conservative mental

22

23      [10] Cubilo argues that the recommended left shoulder surgery that Cubilo
elected not to have was aggressive treatment. Dr. Masserman noted that
24  Cubilo's decision not to have surgery "is a satisfactory decision" and that surgery
remained an option "if and when she decides that her symptoms have reached a
25  level for which she wishes to have the surgery done." AR 482. Even assuming
error in one finding, remand would not automatically result. In *Carmickle v.*
26  *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit
concluded that two of the ALJ's reasons for making an adverse credibility finding
27  were invalid. The court held that when an ALJ provides specific reasons for
discounting the claimant's credibility, the question is whether the ALJ's decision
28  remains legally valid, despite such error, based on the ALJ's "remaining

health treatment plan including once weekly "cognitive behavioral therapy in an individual or group setting for 4 months."  AR 32, 405.

### 3. Non-Compliance

Noncompliance with treatment may form the basis for an adverse credibility finding.  *Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (en banc) (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).  The ALJ noted Cubilo did not take her medication as prescribed (AR 16, 18, 20, 24, 82, 300, 344, 426); at times refused to use insulin or took the wrong dose to control her diabetes mellitus (AR 16, 21, 349, 426); and refused to have the recommended left shoulder surgery (AR 18, 479-80).

### 4. Daily Activities

An ALJ may consider the claimant's daily activities as one of many factors in weighing a claimant's credibility.  *Tommasetti*, 533 F.3d at 1039.  The ALJ noted that in May 2009, Cubilo reported to Dr. Warick that she has looked for work, but not very actively; attends church; visits friends; walks almost daily for thirty minutes; gambles three times per week at a friend's house; plays mah jong; and plays with and takes care of her grandchildren, ages 18 months, 2 1/2 years, and 4 years.  AR 21-22, 33, 492-93.  Cubilo reported to Dr. Warick that she washes the dishes, cleans the house, takes out the trash, makes lunch and dinner, and drives.  AR 21, 30, 489.  The ALJ further noted that only one month later, in June 2009, Cubilo testified at the hearing that she sometimes goes out with friends, but mostly stays at home; cannot sweep the floor or wash the

reasoning and ultimate credibility determination."  *Id.* at 1162 (italics in original); *see Batson*, 359 F.3d at 1197 ("[I]n light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision").  Here, the ALJ's credibility assessment would remain valid even if she erred in finding only conservative treatment.

1   dishes; sometimes needs help with bathing and showering; cannot cook; cannot
2   go to the grocery store by herself; and cannot drive.  AR 33, 84-86.  The ALJ also
3   noted that the medical records did not show a corresponding decline in her
4   physical and/or mental condition to explain her testimony.  AR 33.  The ALJ
5   concluded that the RFC assessment was consistent with Cubilo's activities as
6   described in May 2009.  *Id.*

8   **5.  Inconsistent Statements**

9   An ALJ may consider inconsistencies in claimant's statements when
10  weighing a claimant's credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ properly
11  found that Cubilo's testimony that she mostly stayed at home and could not do
12  much was inconsistent with her statements a month earlier to Dr. Warick.  AR 33.
13  The ALJ also noted Cubilo provided inconsistent explanations regarding the
14  onset of her mental problems.  AR 33, 397, 489-90.

15  **6.  Conclusion**

16  The ALJ provided clear and convincing reasons, supported by substantial
17  evidence, for finding Cubilo's statements and testimony not credible to the extent
18  they were inconsistent with her RFC.  "If the ALJ's credibility finding is supported
19  by substantial evidence in the record, we may not engage in second-guessing."
20  *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169
21  F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.

23  **IV.**

24  **ORDER**

25  IT IS HEREBY ORDERED that the decision of the Commissioner is
26  affirmed.

28  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

1    Order and the Judgment herein on all parties or their counsel.

2

3

4

5

6    DATED: January 31, 2012

7                                          ALICIA G. ROSENBERG
                                           United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22